# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANETTE RIOS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　Defendant. | Case No.  1:14-cv-01346-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL<br>SECURITY APPEAL AND REMANDING<br>ACTION<br><br>(ECF Nos. 12, 15) |

## I.

## INTRODUCTION

Plaintiff Jeanette Rios ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a history of congestive heart failure; a history of polysubstance abuse; hypertension; depressive disorder; and an anxiety disorder.  For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge.  (See ECF Nos. 7, 9.)

1  benefits and a Title XVI application for supplemental security income on May 25, 2011.  (AR

2  77, 89.)  Plaintiff's applications were initially denied on September 9, 2011, and denied upon

3  reconsideration on March 15, 2012.  (AR 124-28, 134-35, 136-37.)  Plaintiff requested and

4  received a hearing before Administrative Law Judge Danny Pittman ("the ALJ").  Plaintiff

5  appeared for a hearing on March 14, 2013.  (AR 39-76.)  On April 25, 2013, the ALJ found that

6  Plaintiff was not disabled.  (AR 14-24.)  The Appeals Council denied Plaintiff's request for

7  review on June 12, 2014.  (AR 9-10.)  On July 3, 2014, the Appeals Council set aside the earlier

8  reconsideration to consider additional information and denied Plaintiff's request for review.  (AR

9  1-4.)

10          **A.      Relevant Hearing Testimony**

11          Plaintiff testified at the March 14, 2013 hearing.  (AR 43-67, 66-70.)  Plaintiff was born

12  on July 12, 1960.  (AR 43.)  She is 5 foot 2 inches tall and weighs 110 pounds.  (AR 43.)

13  Plaintiff is married and does not live with her husband although they are not legally separated.

14  (AR 43.)  Plaintiff has two adult children.  (AR 43-44.)  She lives in a house with her boyfriend.

15  (AR 43.)

16          Plaintiff has a driver's license and drives once a week to her group therapy.  (AR 44.)

17  Plaintiff prefers not to drive and was driven to the hearing by her boyfriend.  (AR 45.)

18          Plaintiff graduated from high school and attended a vocational college where she

19  received a certificate in computer sciences.  (AR 45.)  Plaintiff worked in the accounting office

20  of the Rug Doctor; and for seven months for an insurance company.  (AR 46-47.)  In 1999,

21  Plaintiff worked for a temporary agency repairing computers.  (AR 47.)  Plaintiff has sold

22  computer software, advertising and handyman services, was a receptionist for a grading

23  company, and did office work for a property management company.  (AR 47-48, 68-70.)

24          Plaintiff is currently unable to work due to fatigue which she believes is due to her heart

25  condition.  (AR 48.)  Plaintiff did go back to work after taking a year of disability due to her

26  heart condition and worked through 2011.  (AR 49.)  Plaintiff receives treatment for her heart

27  condition at Community Hospital's healthcare center.  (AR 49.)  Plaintiff sees different doctors

28  and no doctor has given her any permanent restrictions due to her heart condition.  (AR 49.)

1  Plaintiff's heart condition is treated with medication.  (AR 49-50.)  The medication makes her

2  light headed and dizzy.  (AR 50.)

3        Plaintiff is also taking medication for depression and her dosage was recently increased.

4  (AR 50.)   Plaintiff also takes medication that helps her sleep.   (AR 50.)   Plaintiff sees a

5  psychiatrist and therapist which does help.  (AR 50.)  Plaintiff is attempting to quit smoking and

6  drinks alcohol about once a month.  (AR 50-51.)  Plaintiff has a history of drug use and last used

7  meth in 2007.  (AR 51.)   Plaintiff did not attend any drug rehab or counseling program, but is

8  currently addressing her issues in group therapy.  (AR 51.)  Plaintiff's family has a history of

9  heart disease, but she believes that her drug use damaged her heart.  (AR 51-52.)

10       Plaintiff has fatigue and gets chest pains two to three times per week.  (AR 52.)  The

11 doctors are unable to determine what is causing her chest pain.  (AR 52.)  When Plaintiff has

12 chest pain she lays down.  (AR 52.)  Plaintiff has to move around a lot when she sits and feels

13 better when she is lying down with her feet off the ground.  (AR 53.)  Plaintiff lies down during

14 the day for about five hours.  (AR 66.)  Plaintiff can stand for ten minutes.  (AR 53-54.)  Plaintiff

15 can walk a half to a full block.  (AR 54.)  Plaintiff can lift a gallon of milk, but not a case of

16 soda.  (AR 54.)  If Plaintiff drops something she asks someone else to pick it up for her.  (AR

17 55.)  If she is home alone she will get down on the ground to pick up what she dropped and then

18 get back up.  (AR 55.)  Plaintiff sleeps over fifty percent of the day.  (AR 66.)

19       Plaintiff has difficulty remembering the names of people she has known for a long time.

20 (AR 55.)  Plaintiff puts her medications in a case that separates them for the month so she can

21 remember to take them.   (AR 55.)   If someone is talking to Plaintiff she will find herself

22 suddenly zoning out and not listening to them.  (AR 55.)  Plaintiff cannot follow a recipe.  (AR

23 55.)  Plaintiff can read and follow simple instructions such as microwaving a meal, but has

24 trouble making decisions.  (AR 55-56.)  Plaintiff has trouble getting along with people because

25 they irritate her.  (AR 56.)

26       On a typical day, Plaintiff gets up and has coffee, loads the dishwasher and then rests.

27 (AR 56.)  When the dishwasher is done, she will unload it and put some laundry in.  (AR 56-57.)

28 Most of her day is spent watching television, shows where she does not have to follow a plot.

1   (AR 57.)  Plaintiff would not be able to tell someone what the show she is watching is about.
2   (AR 57.)

3         Plaintiff is able to do her self-care and can prepare meals.  (AR 57.)  Plaintiff does the
4   dishes, unloads the dishwasher, and does laundry.  (AR 57.)  Plaintiff does not clean the house,
5   do yardwork, garden, or pay bills.  (AR 58.)  Plaintiff does the grocery shopping once every two
6   weeks.  (AR 58.)  Plaintiff occasionally visits with friends or family.  (AR 58.)  On Sundays she
7   goes to her boyfriend's mother's house for dinner.  (AR 59.)  Plaintiff has no hobbies or
8   interests.  (AR 59.)  She has a dog and feeds him.  (AR 59.)  Plaintiff used to go to church but
9   she does not have the energy to get dressed up to go anymore.  (AR 60.)

10        The doctors have told Plaintiff that her heart function is improving, but she thinks they
11  have not performed the correct tests to find out what is wrong with her.  (AR 60.)  Plaintiff feels
12  that her fatigue has gotten worse.  (AR 61.)  She has advised her doctors of this but they told her
13  to see how her medication is working.  (AR 61.)  Plaintiff gets bladder infections every several
14  months.  (AR 61.)  The infection clears up when she takes antibiotics.  (AR 61-62.)  Plaintiff
15  would not be able to work when she has a bladder infection because she has to keep going to the
16  bathroom.  (AR 62.)

17        Plaintiff is receiving treatment at Fresno County Mental Health.  (AR 62.)  It was hard for
18  her to get treatment because she did not believe there was anything wrong with her.  (AR 63.)
19  Plaintiff has been diagnosed with major depression.  (AR 63.)  Her depression is worse
20  sometimes than at other times.  (AR 63.)  If Plaintiff was working she would miss fifteen days
21  per month due to her depression.  (AR 63.)  Plaintiff is unable to accomplish anything because
22  her emotions get out of control.  (AR 64.)  Her emotional issues developed after her heart
23  problem.  (AR 64-65.)  Plaintiff is unable to handle normal workplace stress; however the
24  overriding problem with her ability to work is the fatigue.  (AR 65.)

25        **B.**    **ALJ Findings**

26        The ALJ made the following findings of fact and conclusions of law.

27        •     Plaintiff meets the insured status requirements of the Social Security Act through
28             December 31, 2013.

- •     Plaintiff has not engaged in substantial gainful activity since the alleged onset date of April 25, 2011.

- •     Plaintiff has the following medically determinable impairments: history of congestive heart failure; history of polysubstance abuse; hypertension; depressive disorder; and an anxiety disorder.

- •     Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments.

- •     Plaintiff has not been under a disability, as defined in the Social Security Act, from April 25, 2011, through the date of the decision.

(AR 19-23.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the

claimant is disabled. If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by finding that her mental impairments were not

1    severe at step two or the sequential analysis.  Defendant counters that the ALJ properly engaged

2    in the "special technique" outlined in the regulations and there is substantial evidence in the

3    record to support the finding that Plaintiff does not have a severe impairment.

4         Under the Social Security Act, disability is defined as the "inability to engage in any

5    substantial gainful activity by reason of any medically determinable physical or mental

6    impairment which can be expected to result in death or which has lasted or can be expected to

7    last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The burden

8    is on the claimant to prove that they are disabled at steps one through four, at step five the burden

9    shifts to the Commissioner to show that there are a significant number of jobs in the national

10   community that the claimant can perform.  Bray v. Commissioner of Social Security Admin.,

11   554 F.3d 1219, 1222 (9th Cir. 2009).

12        As described above, at step two the ALJ is to consider the medical severity of the

13   impairments to determine if they meet the durational requirements under the Act.  20 C.F.R. §

14   404.1520(a)(4)(ii).  A severe impairment is an impairment or combination of impairments that

15   significantly limits the claimant's physical or mental ability to do basic work activities.  20

16   C.F.R. § 404.152(c).  Basic work activities are the abilities and aptitudes necessary to do most

17   jobs.  20 C.F.R. §404.1521(b).  For the purposes relevant to Plaintiff's appeal this would include

18   "[u]nderstanding, carrying out, and remembering simple instructions; [u]se of judgment;

19   [r]esponding appropriately to supervision, co-workers and usual work situations; and [d]ealing

20   with changes in a routine work setting."  (Id.)  "An impairment is not severe if it is merely 'a

21   slight abnormality (or combination of slight abnormalities) that has no more than a minimal

22   effect on the ability to do basic work activities.' "  Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir.

23   2005) (quoting S.S.R. No. 96–3(p) (1996)).

24        In his decision, the ALJ found that Plaintiff's medical records show evidence of a

25   depressive disorder and an anxiety disorder, however he found that Plaintiff's impairment was

26   not severe.  (AR 21.)  Because the ALJ found that Plaintiff did not have a severe impairment he

27   found her to not be disabled (AR 23-24), and it is this finding that Plaintiff challenges.

28        "The Commissioner has stated that '[i]f an adjudicator is unable to determine clearly the

7

1 effect of an impairment or combination of impairments on the individual's ability to do basic

2 work activities, the sequential evaluation should not end with the not severe evaluation step.' "

3 Webb, 433 F.3d at 687 (quoting S.S.R. No. 85–28 (1985)).  Courts have found that step two is "a

4 de minimis screening device [used] to dispose of groundless claims."  Id. (quoting Smolen, 80

5 F.3d at 1290.  Therefore, the ALJ may only find that a claimant lacks a medically severe

6 impairment or combination of impairments when his conclusion is "clearly established by

7 medical evidence."  Webb, 433 F.3d at 687 (quoting S.S.R. 85–28).

8        In deciding that Plaintiff did not have a severe impairment the ALJ considered that

9 Plaintiff's treatment records show good memory and comprehension with fair judgment and

10 insight.  (AR 21.)  While the record indicated a depressed mood with helpless thoughts on

11 occasion, other records indicate a normal mood and affect.  (AR 21.)

12       Plaintiff's medical records in 2007 demonstrate that she was prescribed Wellbutrin (AR

13 333), however, the treatment record from this time period is devoid of any mention of depression

14 or anxiety (289-357), other than a single visit..   On November 8, 2007, Plaintiff had a

15 consultative physical examination by Dr. Damania.  (AR 358-362.)  She complained of extreme

16 fatigue, anxiety, and depression due to her inability to work because of her congestive heart

17 failure.  (AR 358.)  Dr. Damania noted that Plaintiff was fairly groomed and dressed, awake,

18 alert, cooperative, pleasant to talk to, and was a good historian.  (AR 359.)

19       Plaintiff's medical records during 2011 show that her mood was normal during medical

20 exams.  (AR 372, 376, 387, 398.)  On July 26, 2011, Plaintiff had a consultative medical

21 examination on July 26, 2011 with Dr. Steven Stoltz.  (AR 406-10.)  Plaintiff indicated she was

22 taking no medication and Dr. Stoltz found her to be quite talkative and in no distress.  She was

23 alert and oriented times four and there is no indication that Plaintiff complained of any anxiety or

24 depression.  (AR 408.)

25       On January 24, 2012, a request for medical advice was completed by Lesa Webb.  (AR

26 413-15.)  The examiner notes state that when called to verify the current allegations, Plaintiff

27 alleges depression, but has no formal diagnosis.  (AR 415.) Plaintiff stated that she will ask for a

28 psych referral at her pending doctor's appointment in March 2012.  (AR 415.)

On March 4, 2012, Plaintiff had a comprehensive psychological examination by Dr. Bonilla.  (AR 417-22.)  The record notes that Plaintiff was cooperative throughout the interview, information was provided by Plaintiff, and she was considered to be a reliable historian.  (AR 417.)  The mental health issue that Plaintiff complained of was depression.  (AR 417.)  Plaintiff reported that her depressive symptoms began around April 2011 when she was unable to work.  (AR 417.)  Plaintiff reported periods of sadness; crying episodes; isolating herself; no interest in activities; decreased motivation and energy; feeling hopeless, helpless, and worthless; difficulty concentrating; forgetfulness; decreased memory; low frustration tolerance; increased irritability; and occasional anger.  (AR 418.)  Plaintiff reported that she was able to complete her adaptive living skills "somewhat independently," but requires extra time.  (AR 419.)  Plaintiff could engage in light duty chores, but does no grocery shopping or errands.  (AR 419.)  Plaintiff could cook simple meals and does not drive.  (AR 419.)

Dr. Bonilla found Plaintiff's social functioning to be fair.  (AR 419.)  Plaintiff reported that she enjoyed spending time with her family when they come over, watching television, and spending time with her pet.  (AR 419.)

Dr. Bonilla found Plaintiff's hygiene and grooming were fair, and eye contact was good.  (AR 419.)  Plaintiff behavior was cooperative and attitude was pleasant.  (AR 419.)  Plaintiff stream of mental activity was within normal limits; speech form was logical, coherent, and concise; articulation was clear; and volume was normal.  (AR 419.)  Plaintiff's thought content was appropriate and there were no indications of hallucinations or delusions.   (AR 419.)  Plaintiff's mood was euthymic;[2] but she reported poor sleep and appetite.  (AR 419.)  Other than difficulty with math calculations and serial threes, Plaintiff's intellectual functioning and sensorium testing was normal.  (AR 419-420.)  Plaintiff had normal concentration, judgment and insight and her memory was intact.  (AR 420.)  Plaintiff was diagnosed with depressive disorder, not otherwise specified secondary to medical condition; amphetamine dependence in remission; cannabis dependence in remission; and a Global Assessment of Function ("GAF") of 63.  (AR

---

[2] Moderation of mood, not manic or depressed.  Stedman's Medical Dictionary 678 (28th Ed. 2006).

420-21.)

Dr. Bonilla found that Plaintiff appeared to respond to questions in an open and honest manner and did not appear to be exaggerating her symptoms nor were there any inconsistencies thought the evaluation.  (AR 421.)  Plaintiff's symptoms were found to be in the mild range and the likelihood of her condition improving in the next twelve months was good with treatment.  (AR 421.)  Plaintiff was not suffering from a major mental disorder at the time of the evaluation.  (AR 421.)

Dr. Bonilla found that Plaintiff was capable of managing her own funds.  (AR 421.)  Plaintiff was mildly impaired in her ability to perform simple and repetitive or detailed and complex tasks, ability to accept instructions from a supervisor, interact with co-workers or the public; sustain an ordinary work routine without special supervision; and maintain regular attendance in the workplace.  (AR 421.)  Plaintiff was mild to moderately impaired in her ability to complete a normal workday/workweek without interruptions from a psychiatric condition.  (AR 421.)  Plaintiff ability to deal with stress and changes in the workplace was moderately impaired.  (AR 421.)   The likelihood of Plaintiff deteriorating emotionally in the work environment was minimal to moderate.  (AR 421.)

On March 15, 2012, Dr. Henderson completed a psychiatric review technique finding that Plaintiff's mental impairments were not severe.  (AR 427.)  Plaintiff was found to have mild restrictions of activities of daily living; mild difficulty in maintaining social functioning; and mild difficulty in maintaining concentration, persistence, or pace; with no episodes of decompensation of extended duration.  (AR 437.)

On April 20, 2012, and September 5, 2012, Plaintiff was seen by her physician and the records note that she had normal mood and affect.  (AR 459, 463.)

On September 21, 2012, Plaintiff began treatment at the Fresno County Mental Health Department.  (AR 451-53.)  She reported that she has a sister who is an active alcoholic and she takes care of her.  (AR 451.)  Plaintiff's medical tests come back normal and her doctors tell her she is healthy as a horse.  (AR 452.)  She occasionally smokes marijuana to calm herself down.  AR 452.)  Plaintiff was cooperative, engaging, and frustrated.  (AR 453.)  Her speech was loud.

(AR 453.)  Plaintiff's mood was sad, and affect was labile.[3]  (AR 453.)  Plaintiff was oriented and her thoughts were organized and linear.  (AR 453.)  Plaintiff was preoccupied with the doctor's inability to find something wrong with her.  (AR 453.)  Plaintiff's memory, comprehension, and general fund of knowledge were good.  (AR 453.)  Plaintiff's judgment and insight were fair.  (AR 453.)  Plaintiff was diagnosed with major depressive disorder, moderate, recurrent and anxiety disorder.  (AR 453.)

On September 29, 2012 Plaintiff reported that she had been feeling tearful and sad a couple days a week for the past three months.  (AR 450.)  Plaintiff's son, girlfriend and baby are living with her and she is constantly cleaning up after them.  (AR 447.)  Plaintiff reported anergia; anhedonia; feeling hopeless, helpless, worthless, and overwhelmed; constant worry about her health and thoughts of what is the purpose of her life.  (AR 447.)  Plaintiff reported visiting her daughter in Redondo Beach for 12 days and feeling good, with her symptoms coming back when she returned home.  (AR 447.)  Plaintiff is using marijuana every couple months and drinks one beer a couple times a week while cooking.  (AR 448.)  Plaintiff's interest is taking care of her grandson.  (AR 448.)  Plaintiff was cooperative with normal motor activity. (AR 448.)  She was alert and speech, orientation, insight, and judgment were normal.  (AR 448-49.)  Thought processes were organized.  (AR 448.)  Plaintiff was depressed and anxious with a sad affect and a GAF of 52.  (AR 449.)

On November 10, 2012, Plaintiff reported that she did well on her medication for two weeks before her symptoms returned.  (AR 445.)  She has received some help from the group and individual therapy.  (AR 445.)  Plaintiff's son's girlfriend was using drugs and not stable when coming off.  (AR 445.)  Plaintiff's two year old grandson has bonded with her.  (AR 445.) Plaintiff was cooperative and alert.  (AR 445.)  Cognition, speech, orientation, insight and judgment were normal.  (AR 445.)  Plaintiff's thought processes were organized.  (AR 445.)  She was depressed with a sad affect and had a GAF of 55.  (AR 445-46.)

Plaintiff was seen again on December 18, 2012, complaining that she had been in a worse

---

[3] Denoting free and uncontrolled mood or behavioral expression of the emotions.  Stedman's Medical Dictionary 1037 (28th Ed. 2006).

1 mood for the last three weeks.  (AR 443.)  Plaintiff's son, girlfriend, grandson, and sister are all

2 still living with her.  (AR 443.)  Plaintiff was cooperative and alert.  (AR 443.)  Her motor

3 activity, cognition, speech, orientation, and insight and judgment were normal.  (AR 443.)

4 Plaintiff's thought processes were organized. (AR 443.)  Thought content was helpless/hopeless.

5 (AR 443.)  Plaintiff was sad and depressed.  (AR 443.)  Plaintiff had a GAF of 55.  (AR 443.)

6      On January 30, 2013, Plaintiff reported her depression was about the same and the group

7 therapy was helping her.  (AR 441.)  She did not have energy to do much but watch television,

8 read, and sleep.  (AR 441.)  Plaintiff was cooperative and pleasant with good eye contact.  (AR

9 441.)  Plaintiff had slight motor retardation but no obvious tic movements.  (AR 441.)  Plaintiff

10 was alert but had difficulty with remove memory and trouble comprehending things.  (AR 441.)

11 Plaintiff's speech, orientation, insight and judgment were normal.  (AR 441.)  Plaintiff's thought

12 processes were organized.  (AR 441.)  Plaintiff's thought content was helpless/hopeless.  (AR

13 441.)  She was depressed and cried during the session.  (AR 441.)  Plaintiff's medication was

14 increased.  (AR 442.)

15      The medical evidence does not clearly establish that Plaintiff's mental impairments are

16 not severe.  Webb, 433 F.3d at 687.  The ALJ relied on the findings of Dr. Bonilla and the

17 medical records which showed a normal mood and affect, (AR 21), however these records all

18 predate Plaintiff's mental health treatment records which could indicate that Plaintiff's mental

19 condition may have deteriorated.  While the ALJ acknowledged the mental health treatment

20 records indicate that Plaintiff has depression and anxiety (AR 21), he did not address the findings

21 of Plaintiff's treating provider.

22      The ALJ found that the GAF of 63 assessed by Dr. Bonilla indicated only mild

23 impairments (AR 21), but her treating providers subsequently assessed a GAF of 52 and 55 (AR

24 449, 443, 446).  Finally, the ALJ gave great weight to the opinion of Dr. Henderson which was

25 prior to Plaintiff seeking treatment for her mental health issues and therefore his opinion did not

26 consider whether Plaintiff's mental impairments had increased in severity.  (AR 22.)

27      Here, Plaintiff has been diagnosed with severe depression and she has presented medical

28 evidence with findings of impairment.  Cf. Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir.

2005) (affirming finding of no severe impairment where none of the medical opinions included a finding of impairment, a diagnosis, or objective test results).  There is sufficient evidence in the record to support a colorable claim which is sufficient to survive the de minimis screening at step two.  <u>Webb</u>, 433 F.3d at 687.  For these reasons, the Court finds that substantial evidence does not support the finding that Plaintiff only has mild impairment in all functional areas and therefore does not have a severe mental impairment.  (AR 23.)  The ALJ erred by finding that Plaintiff's mental impairments were not severe at step two and failing to proceed to the next step in the sequential analysis.  Therefore, this action shall be remanded for the ALJ to continue the sequential analysis to determine if Plaintiff is disabled under the Social Security regulations.

**V.**

**CONCLUSION AND ORDER**

Based on the foregoing, the Court finds that the ALJ erred by determining that Plaintiff's mental impairments were not severe at step two and not proceeding to the next step in the sequential analysis.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this action is remanded for the ALJ to continue the sequential analysis.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __**September 8, 2015**__

_____
UNITED STATES MAGISTRATE JUDGE